**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SHAWNTEL JOHNSON,**

*Plaintiff,*                                          Case No.: 8:26-cv-2359

*v.*

                                                      **JURY TRIAL DEMANDED**

**CLARITY SERVICES, INC.,**

*Defendant.*

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Shawntel Johnson ("Ms. Johnson"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action for damages brought by Ms. Johnson against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2.      This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which provides that an action to enforce any liability created under the FCRA may be brought in any appropriate United States district court without regard to the amount in controversy.

3.      This Court has personal jurisdiction over the Defendant because the Defendant regularly conducts business in the State of Florida and within this

District, and because the acts giving rise to this action occurred within this District.

4.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Ms. Johnson's claims occurred in this District, where Ms. Johnson resides and received her consumer report disclosures at issue.

## PARTIES

### Ms. Johnson

5.    Ms. Johnson is a natural person residing in Riverview, Hillsborough County, Florida.

6.    Ms. Johnson is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7.    Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8.    Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9.    Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on

consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity's Inaccurate Consumer Reports Regarding Ms. Johnson

10.     Clarity, a CRA that predominantly serves the needs of online lenders making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

11.     On or about June 25, 2026, Ms. Johnson requested and obtained a copy of her consumer disclosure from Clarity.

12.     Ms. Johnson's review of the disclosure revealed that Clarity was reporting inaccurate, contradictory, and misleading information, as detailed below.

### Redacted Driver's License Number

13.     Clarity's consumer disclosure to Ms. Johnson dated June 25, 2026 reports a Florida driver's license entry as "XXXXXXXXX7950."

14.     Of the entry's 13 characters, Clarity has masked nine – leaving only four characters visible to Ms. Johnson.

15.     The FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

16.     Nothing in the FCRA authorizes a consumer reporting agency to redact a driver's license number in a consumer's file disclosure.

17.     Because Clarity has masked the majority of the characters in the entry, Ms. Johnson cannot determine from the disclosure whether the license number Clarity is reporting reflects her actual Florida driver's license, a transposition or data-entry error, a stale or superseded license number, or a license number belonging to a different consumer altogether.

18.     The redaction does not aid the accuracy of the disclosure – it forecloses her ability to verify the underlying data at all.

19.     Clarity's decision to disclose the entry only in redacted form thus violates the FCRA, as Clarity did not "clearly and accurately disclose" the contents of her file as 15 U.S.C. § 1681g(a)(1) requires.

### Redacted Account Numbers

20.     Clarity also redacted the account numbers for each of the five separate account tradelines in its disclosure to Ms. Johnson, showing only the final few digits of each.

21.     The FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

22.     Nothing in the FCRA authorizes a consumer reporting agency to redact a tradeline account number in a consumer's disclosure.

23.     Because Clarity has masked the account number, Ms. Johnson cannot determine from the disclosure whether the account Clarity reports is in fact her account, whether the balance, status, and payment history Clarity attributes to that

number are accurate, or whether the tradeline belongs to a different consumer altogether.

24.    Clarity's decision to disclose the entry only in redacted form thus violates the FCRA, as Clarity did not "clearly and accurately disclose" the contents of her file as 15 U.S.C. § 1681g(a)(1) requires.

**Incorrect Addresses**

25.    Clarity's disclosure to Ms. Johnson includes a section for her personal addresses.

26.    This section of the disclosure revealed that Clarity's file on Ms. Johnson contains an entry where the street address is listed twice within the same address record, as such: "XXXXX DAWN VISTA DR XXXXX DAWN VISTA DR."[1]

27.    It is clear and obvious that an address containing two street numbers and names is simply duplicating the information, and thus false.

28.     By failing to utilize any of the numerous existing address validation tools to scrub these obvious errors, Clarity incorporated data into Ms. Johnson's credit file which is misleading, inaccurate, and prejudicial to Ms. Johnson's creditworthiness.

29.    Clarity's credit scoring system specifically looks at the number of changes to a consumer's residential history; the more frequently a consumer has new address information reported – even if the address is the same but with a small

---

[1] Clarity's disclosure included the actual street number, which has been replaced with "XXXXX" on this Complaint for privacy.

variation – the worse a consumer will score.

30.    Thus, By reporting the same address in multiple malformed formats, Clarity artificially inflated the apparent frequency of Ms. Johnson's residential changes, further harming her risk score.

31.    Additionally, Clarity incorporated an invalid employer address of "NULL NULL NULL" into Ms. Johnson's credit file.

32.    Such reporting provides no meaningful information to a potential lender and was the likely result of the insertion of default, dummy, or placeholder data – the word "null" is itself a stock placeholder used when information that should be present is missing.

33.    Thus, Clarity's systems are literally programmed to insert false information into consumer credit files in many instances, despite the FCRA's mandate to utilize procedures designed to ensure maximum possible accuracy of information.

### Clarity's File Contains Obviously-False Employment Information

34.    Clarity's disclosure to Ms. Johnson includes a list of her employers.

35.    Within the Employer Name section of Ms. Johnson's report, Clarity disclosed each of "GROW FINANCIAL," "GROW FINANCIAL FCU," "GROW FINANCIAL CREDIT UNION," and "GROW FINANCIAL FEDERAL CREDIT UNION."

36.    Clarity also incorporated "NULL NULL NULL" as a valid Employer Address in Ms. Johnson's credit file.

37.    This is a prime example of Clarity's use of dummy, placeholder information in a consumer's credit file when a data furnisher fails to input correct data or fails to provide properly formatted data.

38.    Despite information like this being made-up, dummy, placeholder data, Clarity does not disclose this to consumers or to creditors when it sells the data.

39.    Clarity's systems are literally programmed to insert false information into consumer credit files in many instances, such as the above, despite the FCRA's mandate to utilize procedures designed to ensure maximum possible accuracy of information.

### Clarity's File Contains Obviously-False Income Information

40.    On September 6, 2023, Clarity simultaneously reported Ms. Johnson's Net Monthly Income as both $6,417 and $7,583.

41.    A person can only have one income at any given moment; reporting materially different income figures for the exact same date is, on its face, so atypical and internally contradictory that the data is virtually assured to be false.

42.    No reasonable procedure designed to assure maximum possible accuracy of consumer reports could have permitted these mutually exclusive figures to be reported as if both were accurate.

43.    Among the income figures Clarity reported was $0.00 – directly contradicted by Clarity's own simultaneous reporting that Ms. Johnson is actively employed.

44. A consumer cannot maintain employment while simultaneously earning $0 in income.

45. Income is a critical metric used by financial institutions to calculate debt-to-income ratios and evaluate creditworthiness.

46. By reporting inconsistent and internally contradictory income figures for Ms. Johnson, Clarity's file creates a false and misleading picture of Ms. Johnson's financial situation, significantly increasing the likelihood of credit denials, reduced credit limits, or extension of credit on much less favorable, higher-interest terms.

47. Clarity's reporting of Ms. Johnson's pay frequency is also internally inconsistent.

48. Clarity's file lists six different pay frequencies for Ms. Johnson – "ANNUALLY," "BI-WEEKLY," "BIWEEKLY," "BI_WEEKLY," "MONTHLY" and "SEMIMONTHLY" – even though a consumer is paid on only one schedule at any given time.

49. These pay schedules are mutually exclusive. A person paid weekly is not also paid monthly, and a person paid biweekly (every two weeks) is not also paid semimonthly (twice per month on fixed dates).

50. Clarity's incorporation of contradictory pay-frequency data reflects an absence of data-quality controls and a failure to implement reasonable procedures to assure maximum possible accuracy of its consumer reports.

51. Clarity's file additionally lists facially absurd pay-frequency values for Ms. Johnson: "JUST BIWEEKLY" – the word "Just" is meaningless in this context

and provides no information beyond "BIWEEKLY," yet Clarity's systems treat it as a distinct pay frequency.

52.    Of particular significance, Clarity reported Ms. Johnson's pay frequency as "ANNUALLY" – a claim that virtually no ordinary employee's pay schedule could match.

53.    Most U.S. states require employers to pay wages at least once per month, and many require pay at least semimonthly or biweekly. According to data published by the U.S. Bureau of Labor Statistics, the dominant payroll cycles among U.S. employers are biweekly, weekly, semimonthly, and monthly. Annual payment is not a meaningful category of ordinary payroll.

54.    A "pay frequency" of "ANNUALLY" would mean Ms. Johnson goes a full year between paychecks – a circumstance that, for a non-executive employee, is implausible on its face and would in many jurisdictions be unlawful for the employer to maintain.

55.    On June 15, 2022, Clarity incorporated data into Ms. Johnson's credit file reporting that her next paycheck would arrive on January 1, 2001 – a date that had already passed more than 21 years earlier.

56.    By definition, a "next paycheck" date refers to a future payday; reporting a date that, on the very day of the report, was already in the past is a logical impossibility on the face of the data.

57.    Clarity knew, or in the exercise of any reasonable procedure should have known, that no employed consumer's next paycheck could be scheduled for a

day that had already passed when the report was generated. Yet Clarity incorporated this facially absurd placeholder value into Ms. Johnson's credit file and sold it to creditors anyway.

58.    The presence of a stale "next paycheck" date is the hallmark of a system that accepts whatever information furnishers send without ever checking whether it makes basic sense.

**Clarity Inaccurately Reported Ms. Johnson's Name**

59.    Clarity's file does not even reliably record Ms. Johnson's name. Alongside the correct entry, "SHAWNTEL JOHNSON," the Name table of Clarity's own disclosure carries entries reading "SHAWNTEL SHAWNTEL" and "SHAWNTEL NULL."

60.    Two of these entries are nonsensical on their face: "SHAWNTEL SHAWNTEL", which simply repeats her first name in the place of a surname, "SHAWNTEL NULL", which fills the surname field with a null placeholder rather than a name.

61.    Clarity's own tracking numbers tie these entries to a October 13, 2025 credit application through Okinus Inc – an inquiry in response to which Clarity furnished a consumer report.

62.    Clarity thus accepted the corrupted rendition as Ms. Johnson's identity without objection, sold a report keyed to it, and then retained the corruption in her file as though it were her name.

63.     A surname field populated with a null placeholder, or with a verbatim copy of the consumer's own first name, is not the output of any name-validity check; it is the signature of a system that stores and republishes whatever a furnisher transmits, however facially nonsensical. Catching these entries required no cross-reference to any other field and no outside data – only reading them.

64.     That Clarity nonetheless carried these values in Ms. Johnson's file, sold reports keyed to them, and stood ready to match future inquiries against them demonstrates that, as to the identity data Clarity compiles and sells, anything goes.

65.     No reasonable procedure designed to assure maximum possible accuracy of consumer reports, as required by 15 U.S.C. § 1681e(b), permits a consumer's surname – half of the most basic identifier a file contains – to be reported as a placeholder or as a mere duplicate of the first name.

66.     The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income.

67.     Lenders to whom Clarity sells reports also rely on the identifying information in those reports – such as the consumer's name, date of birth, and address – both to confirm that the report describes the applicant and to assess the risk that an application is fraudulent or that the file has been mismatched to the wrong person. Clarity markets risk scores and fraud-detection products to those lenders.

68. A file carrying inconsistent or facially improbable identifying information tends to present the consumer as a higher fraud or identity risk and impairs the lender's ability to verify the consumer's identity during underwriting.

69. Consequently, Clarity's inclusion of demonstrably false information about Ms. Johnson's address information, consumer name, date of next paycheck, employer address, net monthly income, pay frequency, and phone-number information had a significant negative impact on Ms. Johnson's ability to obtain new credit with favorable terms.

70. Clarity has sold at least 23 reports on Ms. Johnson in the past two years, each of which contained the inaccuracies outlined above.

71. Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Johnson.

72. Clarity was aware that when it sold reports on Ms. Johnson that, under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

**Clarity Fails to Meaningfully Disclose Legally Required Information**

73. As set forth above, on or about June 25, 2026, Ms. Johnson requested a copy of her consumer credit disclosure from Clarity.

74. Upon receipt of Ms. Johnson's request, Clarity was required to disclose all information "clearly and accurately" in the credit file, including the identity of each person who obtained a consumer report within the prior year. *See* 15 U.S.C. § 1681g(a)(3)(A)(ii).

75. The FCRA defines "Identification" as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." *See* 15 U.S.C. § 1681g(a)(3)(B)(i).

76. Frequently, Clarity fails to fulfill its legal obligations regarding disclosure of this data, often disclosing what can be fairly called incomprehensible information which virtually no one would comprehend.

77. For example, Clarity disclosed an inquiry from November 28, 2025 as "CC Connect/TLS."

78. Clarity disclosed this inquiry by listing "CC Connect" and "TLS" together, separated only by a forward slash, without identifying which of these entities actually requested the report, what the relationship between them is, or whether either name even refers to an operating business as opposed to a software product, internal code, or unrelated process.

79. Clarity provided no address, phone number, website, email, or other contact information that would allow Ms. Johnson to identify either entity or the role each played in obtaining her consumer report – information the FCRA expressly requires Clarity to disclose.

80. Clarity disclosed these entities using abbreviations or shortened names that no reasonable consumer would understand, and provided no address, phone number, or other identifying information.

81. Multiple consumers have previously sued Clarity for failing to disclose the names of entities obtaining credit reports as legally required.

82.    The failure of a person to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) (holding that alleged injury to a plaintiff's statutorily created right to truthful information was a cognizable injury in and of itself, regardless of whether the plaintiff actually intended to use the information for its primary purpose; therefore "the Art. III requirement of injury in fact [was] satisfied.").

83.    Further, the lack of accurate, full disclosure of who had obtained her credit report caused Ms. Johnson great frustration and emotional distress and made her concerned she was the victim of fraud or identity theft.

84.    Clarity's incomplete disclosure of who accessed Ms. Johnson's credit report and why caused Ms. Johnson significant frustration, stress, and concern.

**Clarity's Lack of Standards Constitute Willful Violations of the FCRA**

85.    Clarity operates in stark contrast to its parent company, Experian.

86.    While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a lingua franca – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

87.    In place of an industry-standard data-quality framework, Clarity's operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even rudimentary validity checks. Clarity's file on Ms. Johnson is

the direct product of that approach: it incorporates and sells information that is not merely unverified, but facially impossible – information that no reasonable data-quality procedure could have permitted to enter a consumer report.

88.    The inaccuracies in Ms. Johnson's file are not isolated transcription errors traceable to a single furnisher.

89.    They span multiple categories of the data Clarity reports – including address information, consumer name, date of next paycheck, employer address, net monthly income, pay frequency, and phone-number information – and they share a common signature: each is the kind of error that a single, elementary validity check would have caught before the data was incorporated into Ms. Johnson's file and sold to creditors.

90.    Clarity instead operates a system designed to accept and resell that data as if it were genuine.

91.    Clarity is not unaware that this is occurring. Clarity has been the subject of repeated FCRA litigation arising from the same categories of inaccuracy described in this complaint – invalid driver's license entries, scrambled or mutilated renditions of the consumer's own name, opaque or bundled inquiry disclosures, and the wholesale incorporation of placeholder or impossible data.

92.    Despite this notice, Clarity has continued to operate its systems in materially the same way, without implementing the basic validity checks that would have prevented the errors complained of here.

93.    Clarity's decision to forgo the quality controls used by its parent company and by other major consumer reporting agencies, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose data it sells, including those of Ms. Johnson.

94.    As of the date of this filing, Clarity continues to include the aforementioned false information in Ms. Johnson's credit file. As such, Ms. Johnson demands that Clarity conduct an investigation upon service of this lawsuit and correct her file within 30 days.

95.    Ms. Johnson has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

96.    Ms. Johnson adopts and incorporates paragraphs 1 through 95 as if fully stated herein.

97.    Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Johnson, as Clarity sold consumer reports containing each of the errors outlined above.

98.    Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers.

99.     Clarity's conduct was thus willful or done with a reckless disregard for Ms. Johnson's rights under the FCRA.

100.    As a result of its conduct, Clarity is liable to Ms. Johnson for the greater of Ms. Johnson's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Johnson respectfully requests this Honorable Court enter judgment against Clarity for:

    a.    the greater of Ms. Johnson's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    b.    punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

    d.    such other relief that this Court deems just and proper.

## COUNT II
### CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count I)

101.    Ms. Johnson adopts and incorporates paragraphs 1 through 95 as if fully stated herein, and pleads this count strictly in the alternative.

102.    Clarity owed Ms. Johnson a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Johnson.

103.  Clarity violated 15 U.S.C. § 1681e(b) when it sold consumer reports containing each of the errors outlined herein.

104.  Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Ms. Johnson is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Johnson respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## COUNT III
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)

105.  Ms. Johnson adopts and incorporates paragraphs 1 through 95 as if fully stated herein.

106.  Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Ms. Johnson with a redacted version of her Consumer Disclosure, including by redacting the account numbers on her OneMain Financial, Acima Digital, Republic Bank/NetCredit, Acima Digital, and OneMain Financial tradelines.

107.  Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

108. Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA.

109. As a result of its conduct, Clarity is liable to Ms. Johnson for the greater of Ms. Johnson's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Johnson respectfully requests this Honorable Court enter judgment against Clarity for:

a.    the greater of Ms. Johnson's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.    such other relief that this Court deems just and proper.

## COUNT IV
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)
### (Pled in the Alternative to Count III)

110. Ms. Johnson adopts and incorporates paragraphs 1 through 95 as if fully stated herein, and pleads this count strictly in the alternative.

111. Clarity owed Ms. Johnson a legal duty to accurately disclose all the information in her credit file upon her request.

112. Clarity breached this duty when it provided Ms. Johnson with a

redacted version of her Consumer Disclosure, including by redacting the account numbers on her OneMain Financial, Acima Digital, Republic Bank/NetCredit, Acima Digital, and OneMain Financial tradelines.

113. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Ms. Johnson is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Johnson respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## COUNT V
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

114. Ms. Johnson adopts and incorporates paragraphs 1 through 95 as if fully stated herein.

115. Clarity violated 15 U.S.C. § 1681g(a)(3)(A)(ii) when it failed to identify each person, including the end-user, that procured Ms. Johnson's consumer report during the one-year period preceding the date upon which she made the request.

116. Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits.

117.    Clarity's conduct was willful, intentional, and exhibited a reckless disregard for its duties to provide clear and accurate disclosures.

118.    As a consequence, Clarity is liable to Ms. Johnson for the greater of Ms. Johnson's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Ms. Johnson respectfully requests this Honorable Court enter judgment against Clarity for:

a.    the greater of Ms. Johnson's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.    such other relief that this Court deems just and proper.

## COUNT VI
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)
### (Pled in the Alternative to Count V)

119.    Ms. Johnson adopts and incorporates paragraphs 1 through 95 as if fully stated herein, and pleads this count strictly in the alternative.

120.    Clarity owed Ms. Johnson a legal duty to disclose the identity of each user that obtained her consumer report within one year of Ms. Johnson's request.

Page **21** of **22**

121.    Clarity breached this duty when it failed to identify each person, including end-users, who procured Ms. Johnson's consumer report.

122.    Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(3)(A)(ii), and Ms. Johnson is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Johnson respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on August 13, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan Geiger, Esq.
Florida Bar No.: 119168
BGeiger@seraphlegal.com
Service@seraphlegal.com
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*